A92A1871. SHAW v. RUIZ.
(428 SE2d 98)

BLACKBURN, Judge.

Appellee Manuel C. Ruiz filed a suit on a promissory note and for damages against Armour Alloy, Inc. and appellant Neil Shaw. After the filing of responses and counterclaims, a pretrial order was issued setting forth a succinct outline of the facts and contentions to be tried, as follows: Ruiz and Shaw were the co-owners of Armour Alloy, Inc. Ruiz sold his stock back to the corporation so that Shaw would be the sole owner in exchange for $20,000 cash and a promissory note in the amount of $50,000. Industrial Equipment Company, another corporation owned by Shaw which was added by amendment as a

party defendant, made two payments on the note but no payments were received from Shaw or Armour Alloy. The defendants were also alleged to have refused to pay Ruiz certain sales commissions and design fees owed him in the amount of $4,710. Ruiz further claimed that Shaw fraudulently transferred all of Armour Alloy's assets to Industrial Equipment Company so that Armour Alloy was unable to pay the note. He sought to recover the sum of the promissory note plus accrued interest, his commission and design fees and punitive damages as a result of Shaw's fraudulent conduct. The issues were tried before a jury which returned a verdict in favor of Ruiz, including special interrogatories finding that Armour Alloy was not insolvent when it issued the promissory note and that the corporate veil had been pierced. The jury awarded Ruiz $70,911.65 in general damages, $10,636.75 attorney fees and $12,500 punitive damages. Shaw appeals from the denial of his amended motion for new trial, enumerating 17 separate errors.

1. Shaw contends that the trial court erred in failing to bifurcate the trial on the issue of punitive damages as required by OCGA § 51-12-5.1 (d) (2). The cause of action arose here subsequent to the effective date of the statute, and thus it should have controlled the trial procedure. However, this court has previously held that where this occurs a litigant cannot acquiesce in the form of the verdict used and then contest it on appeal. *Miles Rich Chrysler-Plymouth v. Massachusetts*, 201 Ga. App. 693 (1) (411 SE2d 901) (1991); *Dunkin' Donuts v. Gebar*, 202 Ga. App. 450 (3) (414 SE2d 683) (1992). Here the trial transcript shows that there was a prolonged, detailed discussion between the parties concerning the jury interrogatories and the form of the verdict, but at no time was the bifurcation issue raised nor was any objection made either before or after the jury was instructed. Accordingly, there is no basis for complaint in this regard.

2. Likewise, no reversible error occurred because the trial court's charge to the jury applied the principles found in OCGA § 51-12-5, which have been replaced by those enunciated in OCGA § 51-12-5.1. The judge specifically inquired at the end of his jury instructions if either counsel had any objections, and both attorneys stated that they had none. Such specific acquiescence waives any objections to the charge as given. *Von Hoff v. Carmichael*, 204 Ga. App. 760 (1) (420 SE2d 643) (1992).

There was no error in the charge so substantial as to be harmful as a matter of law, which would require our review under the exception set forth in OCGA § 5-5-24 (c). *Tahamtan v. Tahamtan*, 204 Ga. App. 680 (6) (420 SE2d 363) (1992). Under the charge given, the jury was to award punitive damages only if they found fraud had been committed; OCGA § 51-12-5.1 (b) also authorizes punitive damages when fraud has been shown. Contrary to Shaw's assertion, no mention

was made of compensation to the plaintiff. Rather, the jury was told to award such damages to deter the wrongdoer from repeating the wrong, which is in accordance with OCGA § 51-12-5.1 (c). Shaw also argues that under the bifurcation procedure in OCGA § 51-12-5.1 (d) (2), which allows new evidence of what amount of damages is sufficient to deter, penalize or punish the defendant, the jury would have realized his weak financial condition at the time and might have awarded less or no punitive damages. This contention is at best conjectural and there is no evidence of record in regard to his financial status. "The burden is on the one who asserts error to show it affirmatively by the record, and the briefs of the parties cannot be used in lieu thereof for adding evidence to support or refute a claim. [Cit.]" *Miller v. Tranakos*, 198 Ga. App. 668, 671 (3) (402 SE2d 772) (1991).

3. Shaw insists that the trial court erroneously denied his motions for directed verdict on the issue of punitive damages because all legal theories pursuant to which the evidence was presented were based upon the old law in OCGA § 51-12-5, and the evidence was not adjusted to the new principles. For the reasons set forth above, there is no merit in this claim.

4. Shaw complains that the trial court erred in sustaining an objection on the ground of relevance when he asked Ruiz how he got certain work in South America after he sold his stock and left Armour Alloy. Pretermitting any issue of whether such evidence was admissible for impeachment purposes, the trial transcript shows that this question was asked and answered in subsequent cross-examination, thereby curing and rendering harmless any error in sustaining the objection complained of. *Seay v. Urban Medical Hosp.*, 172 Ga. App. 344 (2) (323 SE2d 190) (1984).

5. Shaw protests the trial court's overruling his objection based on lack of relevance to questions about whether he was initially unwilling to incorporate the partnership with Ruiz because of his ongoing divorce proceedings. The questions objected to alluded to a letter from Shaw's attorney to his accountant, which was admitted in evidence without objection, explaining that in early 1985 Shaw "was not willing to incorporate because of his then hotly contested divorce." Shaw testified only that he was not trying to hide anything from his wife and that he could not answer why his lawyer made the statement. "No other grounds for the objection appear in the record. Objections based on the irrelevancy of evidence are insufficient to show reversible error. [Cit.] Further, '(q)uestions of relevancy are within the domain of the trial court.' [Cit.] The trial court did not abuse its discretion in allowing the testimony, and there was no reversible error." *Davis v. Knight*, 195 Ga. App. 726 (2) (394 SE2d 634) (1990).

6. Shaw contends that the trial court incorrectly ruled that two invoices from a company in Cartersville, Georgia, to an individual in

Columbia, which he tendered in support of his allegations of fraud and conspiracy on the part of Ruiz, as well as the insolvency of Armour Alloy, were irrelevant because they did not show interference with contractual relations and were therefore inadmissible. The trial court pointed out to Shaw at the time of his objection that he had not pled fraud and the issue was not included in the pre-trial order. During a lengthy colloquy outside the presence of the jury, Shaw's attorney admitted the invoices did not show that any money was lost by Armour Alloy. Moreover, Shaw did not prepare or supervise preparation of the documents, and thus could not connect them to the case to prove any element of contractual interference. " 'Testimony concerning information acquired solely through books and records kept by a third person is inadmissible as hearsay.' [Cits.]" *Dunwoody-Woodlands Condo. Assn. v. Hedquist*, 199 Ga. App. 91, 92 (2) (403 SE2d 893) (1991). Again, no reversible error has been shown.

7. In Enumerations 7 and 8, Shaw complains about the trial court's sustaining an objection to his asking Ruiz to look at a stock purchase agreement and testify how much cash Armour Alloy had on a certain date. The trial transcript reveals that this document had already been introduced in evidence and there had been other testimony about it. There being competent evidence concerning the stock purchase agreement, the refusal to allow Ruiz's testimony in this regard was not reversible error. *Ogletree v. Brokers South*, 192 Ga. App. 53 (4) (383 SE2d 900) (1989).

8. The trial court sustained an objection on the basis that a legal conclusion was called for when Shaw was asked if he felt Ruiz had "a responsibility for that equipment in South America and a responsibility for a portion of its payment, and if so, why?" Shaw suggests that this question does not call for a legal conclusion, but for an opinion which any lay person might be likely to have concerning business investments. "[W]hether a question calls for a legal conclusion[,] or principally a fact which incidentally involves a legal word or phrase, is within the sound discretion of the trial court. [Cits.]" *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 708 (2) (266 SE2d 345) (1980). Shaw made no proffer of what he expected this testimony to show, nor did he rephrase the question to clarify that the "responsibility" he asked about did not refer to a contractual requirement or statutory duty to pay for the equipment, thereby calling for Shaw's conclusion as to the legal import of Ruiz's actions. Under these circumstances, we find no abuse of discretion by the trial court in prohibiting the witness from answering the question. Compare *Dept. of Transp. v. Franco's Pizza &c.*, 200 Ga. App. 723 (2) (409 SE2d 281) (1991).

9. Enumeration 10, which asserts error in the trial court's refusal to admit a document which Shaw claimed would show Ruiz's efforts to divert business away from Armour Alloy, is without merit. This

exhibit was a purchase order from one company to another, neither of which were parties to the litigation, and no witnesses representing them were called to testify as to the authenticity of the document. "Before a writing or record is admissible, under OCGA § 24-3-14 (b), a foundation must be laid through the testimony of a witness who is familiar with the method of keeping the records and who can testify thereto and to facts which show that the entry was made in the regular course of . . . business at the time of the event or within a reasonable time thereafter. [Cit.]" (Emphasis omitted.) *Hertz Corp. v. Mc-Cray*, 198 Ga. App. 484, 485 (2) (402 SE2d 298) (1991).

10. Shaw argues that the trial court erred in refusing to grant his motions for directed verdict as to his personal liability on the basis that the transactions involved were corporate undertakings. The trial judge denied the motion on the grounds that material questions of fact existed as to whether Shaw used corporate funds to pay a personal debt and whether subsequent to entering into the stock purchase agreement Shaw transferred the assets of Armour Alloy to another corporation of which he was the sole stockholder; and that it was a jury question as to whether or not this action and conduct would warrant piercing the corporate veil and holding Shaw personally liable.

"When determining whether a trial court erred by denying a motion for a directed verdict, this court reviews and resolves the evidence and any doubts or ambiguities in favor of the verdict. A directed verdict is not authorized unless there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions demands a certain verdict. OCGA § 9-11-50 (a); *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268) [1990]." *Canal Ins. Co. v. Wilkes Supply Co.*, 203 Ga. App. 35, 36 (2) (416 SE2d 105) (1992). Our review of the record discloses conflicting evidence in regard to these material issues which does not demand a verdict in Shaw's favor. "Where there exist disputed issues of material fact, as in the case sub judice and there is any evidence in the record from which the jury could find in favor of the party opposing the motion, it would be improper for the trial court to direct a verdict. Accordingly, the trial court properly denied [Shaw's] motion for a directed verdict." (Emphasis omitted.) *Swint v. Smith*, 204 Ga. App. 54, 55 (1) (418 SE2d 375) (1992).

11. Shaw protests the trial court's grant of Ruiz's motion for directed verdict on two counts of Shaw's counterclaim for breach of contract seeking damages for lost profits as a result of Ruiz's alleged failure to use his best and reasonable efforts to generate sales. He argues that there is evidence of record that Ruiz quit work before termination of an agency agreement to maintain sales at or above the level Armour Alloy had achieved in previous years; that there was evi-

dence indicating that Ruiz breached the term of the agreement prohibiting him from representing any other business marketing the same or similar products; and that the jury thus had some basis to conclude that the breach of this agreement resulted in a loss of sales and could "calculate a projection" for lost sales and profits as an amount of damages.

The evidence presented was insufficient to create any material issues of fact for jury resolution. The agreement expressly provided that Ruiz was not required to "devote all of his working time and efforts" to Armour Alloy's business. To establish damages, Shaw could only estimate his profit margin to be 15 to 20 percent of gross sales and was unable to produce any past records of sales to substantiate the $79,154 in lost sales he claimed. The figures were based solely upon written and telephone inquiries Shaw testified he made to customers, and he admitted on cross-examination that the amount of $79,000 was gross sales from which he would have earned only $10,000 to $15,000 in profit.

"Ordinarily, anticipated profits are too speculative to be recovered, 'but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits (were) in the contemplation of the parties at the time of the contract, they may be recovered . . . even though they can not be computed with exact mathematical certainty.' [Cit.] However, a claimant may recover lost profits 'only if the business has a proven "track record" of profitability. The jury is not permitted to speculate as to what the allegedly lost profits might have (been). (Cit.)' [Cits.]" *Empire Shoe Co. v. Nico Indus.*, 197 Ga. App. 411, 413-414 (2) (398 SE2d 440) (1990).

" '[T]o recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery.' [Cit.] Further, the losses must be directly traceable to the acts of the other party. [Cit.]" *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 108-109 (2) (395 SE2d 592) (1990). We agree with the trial court that Shaw's alleged lost profits were too remote and speculative to be recovered as "there is no evidence of either net profits or data from which [Armour Alloy's] net profits from [such sales] could be calculated." Id. at 109.

12. A directed verdict was also granted as to Court 3 of the counterclaim for malicious interference with contractual relations and Count 5 alleging that Ruiz breached a covenant not to sue. Shaw contends this was erroneous because there was sufficient conflict in the evidence to raise a jury question on these issues. However, the transcript discloses that when the trial judge was considering the motion for directed verdict and offered to let Shaw present evidence on these

allegations if he had any, his attorney replied that he had no such evidence.

13. Shaw claims further error in the grant of directed verdict on Count 4 of the counterclaim in which he sought punitive damages. OCGA § 51-12-5.1 (b) permits the award of punitive damages only in tort actions where it is proved by clear and convincing evidence that the defendant's actions showed wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. The trial court correctly ruled that there had been no such evidence presented to authorize an award of punitive damages. Moreover, Shaw renewed his objection to the directed verdict only as to Counts 1 and 2 for breach of contract, and his lawyer agreed when the judge pointed out that even if these counts went to the jury punitive damages would not be authorized on a contract claim.

14. Shaw's Enumeration 16, assigning error to the denial of his motion for judgment n.o.v., has not been argued in his brief and is in any event without merit. See *Stone v. Allen*, 201 Ga. App. 842 (1) (412 SE2d 605) (1991).

15. Shaw asserts that the trial court improperly ruled that an amendment to his counterclaim filed on the first day of trial seeking return of funds he had paid Ruiz on the promissory note was a compulsory counterclaim under OCGA § 9-11-13 (a) because it arose out of the same transaction that was the subject matter of Ruiz's suit. Shaw argues that the claim did not arise until a factual determination was made whether Armour Alloy was insolvent at the time of the transaction, and under these peculiar circumstances the law should allow an amendment. However, Shaw did not seek leave of court to file the amendment.

As noted by the trial judge, the correct procedure for the late filing of a compulsory counterclaim is pursuant to OCGA § 9-11-13 (f), which provides that leave of court is necessary before an omitted counterclaim may be set up. Permitting the filing of such a counterclaim is within the discretion of the trial court. *Martin & Jones Produce v. Lundy*, 197 Ga. App. 38 (2) (397 SE2d 461) (1990). Ruiz introduced in evidence two letters he received from Shaw's attorney three to four months after the note involved in the suit was executed claiming that Armour Alloy was insolvent and unable to pay off the note. "[T]his court has held that compulsory counterclaims may not be added by amendment where the defendant has knowledge of the claims at the time the defensive pleadings were prepared and filed in the first instance. [Cit.]" *Haire v. Suburban Auto Body*, 204 Ga. App. 16, 17 (2) (418 SE2d 163) (1992). We find no abuse of discretion, and conclude that the amended motion for new trial was properly denied.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 9, 1993.

*Davis, Gregory & Christy, Hardy Gregory, Jr.,* for appellant.
*McCurdy & Candler, Dana B. Miles, Donald C. Suessmith, Jr.,* for appellee.