A05A1591. JOHNSON COUNTY SCHOOL DISTRICT et al.
v. GREATER SAVANNAH LAWN CARE.
(629 SE2d 271)

PHIPPS, Judge.

Greater Savannah Lawn Care filed a negligence action against Johnson County School District (JCSD) and a JCSD employee, Annie Young. Greater Savannah alleged that on March 15, 2002, one of its employees was driving the company truck in the same direction that Young was driving a JCSD van; that Young made an improper lane change; that, while maneuvering the company truck to avoid colliding with Young, its employee lost control of the truck and wrecked it. Among other items of damages, Greater Savannah sought lost profits. JCSD and Young moved for summary judgment on the claim of lost profits, arguing that they could not be recovered because they were too speculative, remote, and uncertain. The trial court rejected this argument and denied them partial summary judgment. We

---

granted JCSD and Young's interlocutory appeal application to consider whether the denial was proper. Because the record establishes no genuine issue of material fact regarding lost profits, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a trial court's grant or denial of summary judgment de novo, construing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant.[2]

In opposition to the summary judgment motion, Greater Savannah presented the affidavit of Charles Noble, who had worked in various capacities within the lawn care industry from 1984 until 1997. Noble provided the following history.

> Affiant purchased the business now known as Greater Savannah Lawn Care . . . in 2001. Greater Savannah Lawn Care's predecessor was known as Greenview Lawns and was a corporation owned and operated by the national chain, All Green Corporation, from 1996 to 2002. Greenview Lawns had a history of gross profitability at the time Affiant purchased its business. (See Greenview Franchise Budget, attached hereto as Exhibit 2.) In 2002, Greenview Lawns was renamed Greater Savannah Lawn Care. Greater Savannah Lawn Care is an operation doing business as Nitro-Green, a national franchise owned by All Green Corporation. Greater Savannah Lawn Care continues to provide the same lawn care services as Greenview Lawns.

The referenced Greenview Franchise Budget was dated August 3, 2001. Its pages show that the 626 branch[3] of All Green Corporation had earned profits for years 1999, 2000, and 2001;[4] that the branch was forecasted to operate at a loss for the first three months of 2002; that it would begin earning profits in April 2002 and end that year in the black. Greater Savannah contrasts this forecast with its tax return for 2002, which showed a $37,725 loss.

Greater Savannah claims that its forecasted profitability was derailed by the damage to its truck and lawn care equipment that had been attached to it. Noble averred that about one-and-one-half to two

---

[1] OCGA § 9-11-56 (c).

[2] *Wilson v. Allen*, 272 Ga. App. 172, 173 (612 SE2d 39) (2005).

[3] The Greenview Franchise Budget gave the name "Savannah" to the branch referenced as 626.

[4] No explanation is provided for how the report, dated August 3, 2001, shows a profit for the year 2001.

months passed before Greater Savannah replaced the truck and equipment and, during that period, the company's ability to provide timely lawn care was "severely impaired." As an example, Noble explained that due to the unavailability of specialized lawn care equipment for providing liquid treatments for insect and weed control, the company was forced to use granular treatments, which were twice as costly as liquid treatments. In addition, Noble averred that the company eventually had to use funds earmarked for marketing to acquire another truck and additional lawn care equipment and that this diversion of funds curtailed the company's growth. According to Noble, Greater Savannah lost "gross profits" in the amount of $30,552.

"The general rule as to the recoverability of lost profits as an item of damages is that the expected profits of a commercial venture 'are not recoverable as they are too speculative, remote, and uncertain.' "[5] Underlying this rule is the rationale: "The profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages."[6] While recovery for lost profits is not necessarily precluded in a tort action, "such loss must be capable of reasonably accurate computation."[7] "[W]here the type of business and history of profits make the calculation of profits reasonably ascertainable," lost profits may be recovered.[8] To recover lost profits, a party must show with great specificity the probable gain as well as the expenses incurred in realizing such gain.[9] "[T]o establish lost profits, the [jurors] must be provided with information or data sufficient to enable them to estimate the amount of loss with reasonable certainty. Generally speaking, this means that they must be provided with figures establishing the business' projected revenue as well as its projected expenses."[10] Ordinarily, lost

---

[5] *Molly Pitcher Canning Co. v. Central of Ga. R. Co.*, 149 Ga. App. 5, 10 (4) (253 SE2d 392) (1979) (citations omitted).

[6] Id. at 10-11 (citation and punctuation omitted); see also *Witty v. McNeal Agency*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999).

[7] *Molly Pitcher Canning Co.*, supra at 11 (citations and punctuation omitted); see also *Market Place Shopping Center v. Basic Business Alternatives*, 227 Ga. App. 419, 422 (2) (489 SE2d 162) (1997).

[8] *Southern Crate & Veneer Co. v. McDowell*, 163 Ga. App. 153, 154 (2) (293 SE2d 541) (1982) (citations omitted).

[9] *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 832 (4) (586 SE2d 726) (2003).

[10] *Dept. of Transp. v. Martin*, 174 Ga. App. 616, 617 (1) (331 SE2d 45) (1985) (citations and punctuation omitted); see also *Market Place Shopping Center*, supra.

profits may be recovered by a business "only if the business has a proven 'track record' of profitability."[11]

The record before us is void of any competent evidence from which a jury could calculate Greater Savannah's claim for lost profits with reasonable certainty. At the time of the incident, the newly-established company had been operating at a loss. Thus, there is no evidence of its proven track record of profitability. Greater Savannah urges that its claim should survive summary judgment, nevertheless, pointing to its predecessor's history of profitability. But the predecessor's profitability is no substitute for Greater Savannah's because, among other reasons and as Noble testified, Greater Savannah was still "absorbing its start-up costs." Greater Savannah also points to Noble's years of experience in the lawn care industry, the profitability forecasted by the Greenview Franchise Budget in August 2001, its eventual loss for that year, its diversion of marketing funds, and testimony that its ability to provide timely lawn care was severely impaired. But this collection of information fails to provide the required specificity for calculating an amount of Greater Savannah's lost profits directly traceable to a wrongful act by the defendants.

Finally, Greater Savannah proffers the amount of $30,552 as its loss of "gross profits." But the record reveals that this figure is nothing more than a summation of various amounts that had been *scheduled* for receipt by "GreenView/Nitro-Green" for providing certain lawn maintenance: (a) $12,263.68 for insect control for January 1-March 30, 2002; (b) $8,980.62 for lawn care (round 2) for February 15-March 30, 2002; and (c) $9,308.12 for lawn care (round 3) for March 30-May 15, 2002. We fail to see how these amounts combine to show with reasonable certainty the probable gain that Greater Savannah lost due to the defendants' conduct on March 15, 2002.

"[A]n allowance for damages cannot be based on guesswork."[12] "[L]oss of anticipated profits which is completely conjectural is not recoverable."[13] Greater Savannah cannot recover for loss of profits because, generally, expected profits of a commercial business are too uncertain and speculative to afford a basis for damages.[14] The exception to this rule, where the type of business and history of profits make the calculation of profits reasonably ascertainable, has not been shown.[15] Because Greater Savannah has failed to support its

---

[11] *Witty,* supra (citations and punctuation omitted); *Stern's Gallery of Gifts v. Corp. Property Investors,* 176 Ga. App. 586, 592 (3) (337 SE2d 29) (1985).

[12] *Molly Pitcher Canning Co.,* supra at 11 (citation and punctuation omitted).

[13] *Market Place Shopping Center,* supra at 423 (citation and punctuation omitted).

[14] See *Walker v. Crane,* 243 Ga. App. 838, 841 (2) (534 SE2d 520) (2000); *Molly Pitcher Canning Co.,* supra at 10-11.

[15] See *Walker,* supra.

claim for lost profits with evidence[16] such that a jury could calculate the damages without resorting to guesswork or conjecture,[17] the trial court erred in ruling that this claim warranted consideration by a jury.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 8, 2006.

*Gannam, Gnann & Steinmetz, Christian J. Steinmetz III, Clark & Clark, Heather J. Slamenick,* for appellants.
*Suggs, Kelly & Middleton, Richard H. Middleton, Jr.,* for appellee.

---

[16] We note that, in their brief, JCSD and Young assert that Noble testified that the March 15, 2002, accident shut down operations for only two days, citing "Noble's depo." While this notation appears to refer to Charles Noble's deposition, no such deposition has been made a part of the appellate record. And nothing in the appellate record confirms that Charles Noble's deposition was provided to the trial court. Therefore, the unsupported assertion played no part in this opinion.

[17] See *Authentic Architectural,* supra; *Walker,* supra; *Market Place Shopping Center,* supra at 422-423; *Molly Pitcher Canning Co.,* supra at 11; compare, e.g., *Crosby v. Spencer,* 207 Ga. App. 487, 488 (1) (428 SE2d 607) (1993) (lost profits for damage to peach tree business caused by defendant's negligent spraying of herbicide were reasonably ascertainable, where plaintiff's computations were based upon his calculation of net profits from peach trees not damaged by herbicide); *Martin,* supra (evidence of net income generated for years previous to the incident giving rise to the cause of action gave jury a basis to estimate the amount of lost profits with reasonable certainty).