A11A0079. McMILLIAN v. McMILLIAN et al.
(713 SE2d 920)

BLACKWELL, Judge.

When one partner misappropriates a business opportunity of his partnership for the benefit of a competitor, the remaining partners are deprived of the opportunity to profit from the lost business opportunity, and they may be entitled to recover damages in tort for this deprivation. We granted a petition for interlocutory review in this case to address the extent to which a partner so deprived can discover the financial records of the competitor as proof of his damages. Bruce and Robbie McMillian formed a partnership to engage in the bulk-mail services business. Robbie eventually left the partnership and formed Mail Source & Data, Inc., a company that apparently is engaged in the same kind of business. Bruce sued Robbie and Mail Source, alleging that Robbie misappropriated business opportunities of the partnership and gave these opportunities to Mail Source, thereby violating the duties that Robbie owed to the partnership and Bruce. In the course of discovery, Bruce sought the financial records of Mail Source, arguing that they are admissible proof of his damages. The court below disallowed such discovery, and Bruce sought immediate review, which we allowed. This appeal followed.

This case comes to us before discovery is complete and before the evidentiary record has been developed fully, and the parties vigor-

ously dispute many of the facts. But viewing the facts in the light most favorable to Bruce, the party seeking to compel discovery, it appears that, in April 1997, Robbie met with Bruce, his cousin, and asked Bruce to finance a bulk-mail services business that Robbie hoped to launch. Bruce agreed, and along with a third individual, they formed a partnership for the purpose of operating a bulk-mail services business, which they called "Corporate Mail Management."[1] Each partner had a different role in the partnership: Bruce funded its operations; Robbie marketed its services; and the third partner managed business operations. In 1999, the third partner decided to pursue other opportunities and withdrew from the partnership, and Bruce and Robbie decided to continue their partnership as equal partners. Robbie continued to market the services of the partnership, and he assumed responsibility for managing its business operations and even held himself out as the president of Corporate Mail. Bruce continued to fund the business and pledged his personal residence as collateral to secure a business loan and to purchase equipment for the partnership. Despite their efforts, the partnership never made much money.

Over time, Robbie became acquainted with other people who had an interest in entering the bulk-mail services business. In August 2002, Robbie met with two of these people and agreed to start up a new company with them. The new company would offer the same kinds of services as Corporate Mail and, in fact, directly compete with it. At some point in 2002,[2] Robbie told Bruce that he planned to withdraw from their partnership, ostensibly because he had tired of the bulk-mail services business and wanted to do something else altogether. It is undisputed that Robbie never told Bruce about his new company or that it would compete with Corporate Mail.

The new company, Mail Source, was formed in January 2003 and commenced operations almost immediately. Between January and April 2003, it appeared that Robbie still was managing Corporate Mail. Bruce now says, however, that Robbie actually was working for Mail Source during this time, diverting to Mail Source the business opportunities that were presented to Corporate Mail. In April 2003, Robbie shut down Corporate Mail, taking all its assets and business opportunities with him to Mail Source. In its first year alone, Mail Source earned more than $245,000 from customers that previously

---

[1] The partners never committed their partnership agreement to writing. No one disputes, however, that an oral partnership agreement can be effective. See *Asgharneya v. Hadavi*, 298 Ga. App. 693, 697 (4) (680 SE2d 866) (2009); *Arford v. Blalock*, 199 Ga. App. 434, 437-438 (6) (405 SE2d 698) (1991).

[2] The parties dispute whether this conversation occurred before or after Robbie agreed to form the new company.

had been customers or prospective customers of Corporate Mail.

Having been left with nothing but the debts of Corporate Mail, Bruce brought this lawsuit against Robbie and Mail Source. In his complaint, Bruce asserts claims against the defendants based on a variety of tort theories, including claims that Robbie breached his fiduciary duties to Bruce and their partnership and that Mail Source wrongfully induced Robbie to breach his fiduciary duties. For these alleged wrongs, Bruce seeks monetary damages, including damages for his loss of the opportunity to profit from the prospective business opportunities that Corporate Mail lost to Mail Source.[3]

In an effort to build his case for such damages, Bruce sought to discover information from Mail Source about its finances — specifically, its revenue and profits — between 2003 and the present. Bruce served Mail Source and Robbie with interrogatories and requests to produce documents about the finances of Mail Source, but Mail Source and Robbie failed to timely respond to these requests. When Bruce moved to compel responses, Mail Source produced some financial information — a list of its sales by customer between 2003 and 2005 — but it refused to produce all the financial information Bruce had requested. So, Bruce continued to press his motion to compel.

The court below concluded that the financial records of Mail Source are not relevant to the measure of damages and, based on this conclusion, denied the motion to compel. Damages for the loss of a prospective business opportunity must be based, the court below said, on the value that a reasonable person would have assigned to the prospective business opportunity at the time of its loss. What Mail Source actually earned from the business opportunities that it and Robbie allegedly misappropriated from Corporate Mail, the court explained, is irrelevant. Bruce appeals from the denial of his motion to compel.

As a general rule, we review the denial of a motion to compel discovery only for an abuse of discretion. *Hickey v. Kostas Chiroprac-*

---

[3] Bruce also seeks other kinds of damages, but the other damages are not relevant to this appeal. We note that Bruce does not identify the specific business opportunities that he contends Corporate Mail lost to Mail Source as a result of the allegedly wrongful conduct of Robbie and Mail Source. Given his ambiguity about the specific business opportunities at issue, one might be tempted to think, after taking a quick glance at his briefs, that he contends that Mail Source itself is a lost business opportunity, or in other words, that he should have been invited to join Mail Source and is entitled to a share of the profits he would have earned as an owner of Mail Source. But we cannot understand him to actually make such a claim, inasmuch as we cannot conceive of any theory supported by the allegations and evidence in this case under which Bruce could claim an entitlement to participate in a newly created business that he was never invited to join. Instead, we understand the parties' references to losses of prospective business opportunities to refer exclusively to the loss of opportunities for Corporate Mail to provide bulk-mail services to its customers and prospective customers.

*tic Clinics*, 259 Ga. App. 222, 223 (3) (576 SE2d 614) (2003). But in this case, our review is more appropriately governed by the "plain legal error" standard because it appears that the court below denied the motion to compel based on its assessment of the proper measure of damages and the manner in which damages properly may be proven, which are questions of law. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). Before we turn to the issue at hand, however, we should make clear what we do not decide today. Although the parties vigorously dispute the question of liability, we decide nothing today about liability. Instead, we assume for the purposes of this appeal — as, it appears, the court below assumed when it denied the motion to compel — that Robbie and Mail Source are liable in tort for the loss by Corporate Mail of its prospective business opportunities. It may turn out that they have done nothing wrong and are not liable for these losses, but that is a question for another day.

Turning now to the measure of damages, Bruce argues that his damages properly can be based on the revenues, or at least the profits, that Mail Source earned from any business opportunities misappropriated from Corporate Mail. And he points to some earlier decisions of this Court that suggest that disgorgement of ill-gotten revenues or profits may be an appropriate remedy for a breach of fiduciary duty in some cases.[4] In *Jennette v. Nat. Community Dev. Svcs.*, 239 Ga. App. 221 (520 SE2d 231) (1999), an agent breached the fiduciary duties that he owed his principal by diverting business to himself, and we sustained an award of the gross revenues that the agent earned as a result of his wrongful conduct. Id. at 224 (3) ("The gross revenue rightfully belonged to NCDS, and Jennette misappropriated it."). In *Vinson v. E. W. Buschman Co.*, 172 Ga. App. 306 (323 SE2d 204) (1984), we approved of a jury charge that "an unfaithful agent is not entitled to retain the profits of an enterprise operated in competition with the principal's business." Id. at 311 (3). And in *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863 (380 SE2d 498) (1989), which involved a breach of the fiduciary duties that the seller of a business owed to its buyer in connection with a covenant restricting the right of the seller to compete with the buyer, we said that the seller was authorized to recover "the profits of" the

---

[4] Bruce also asserts an unjust enrichment claim against Robbie and Mail Source, but none of the parties say much on appeal about the proper remedy for unjust enrichment. Instead, the parties focus their arguments on the damages recoverable for the loss of a prospective business opportunity, emphasizing wrongful dissolution of a partnership and breach of fiduciary duty as the theories of liability authorizing the recovery of such damages. We decide nothing, therefore, about whether disgorgement of ill-gotten gains might be an appropriate remedy for any unjust enrichment in this case.

company through which the seller wrongfully competed with the buyer. Id. at 864-865 (1) (B). If a disgorgement remedy were appropriate, it would resolve the question with which we are presented today, inasmuch as the revenues and profits of Mail Source absolutely would be relevant to damages because they would be the very measure of damages. But these cases involve fiduciary relationships other than partnerships,[5] and we do not need to decide today whether the disgorgement remedy appropriate in these cases would be appropriate in this one because, even if damages more properly are measured by reference to what Bruce lost, not what Mail Source gained, the revenues and profits of Mail Source still might be probative of damages.

We have addressed the misappropriation of the business opportunity of a partnership before, and we have said that, when a partner wrongfully appropriates a prospective business opportunity of his partnership to his own use or that of another, the remaining partners, who are deprived of an opportunity to profit from the misappropriated business opportunity, may recover their share of the profits that the partnership would have earned from the business opportunity.[6] See *Asgharneya*, 298 Ga. App. at 697 (4) ("A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his co-partner for his share of the prospective business opportunity.") (citation and punctuation omitted); *Arford*, 199 Ga. App. at 438 (7) ("[D]amages for wrongfully excluding a partner from a partnership business opportunity should include compensation to the ousted partner for his share of the prospective business opportunity."). Like any lost profits, a partner's share of the profits that his partnership would have earned from a lost business opportunity "must be shown with reasonable certainty," and "[p]rofits which are remote, or speculative, contingent or uncertain are not recoverable." *MTW Investment Co. v. Alcovy Properties*, 228 Ga. App. 206, 207 (1) (a) (491 SE2d 460) (1997) (citations and punctuation omitted). That said, the rule that lost profits cannot be speculative or uncertain "relates more especially to the uncertainty as to cause, rather than uncertainty as to the

---

[5] The Uniform Partnership Act, OCGA § 14-8-1 et seq., itself provides explicitly that disgorgement sometimes is an appropriate remedy for the misconduct of a partner. See OCGA § 14-8-21 (a) ("Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."). We need not address today whether this disgorgement provision would apply to the misappropriation of a prospective business opportunity.

[6] These cases do not say whether this measure of damages is the exclusive measure of damages in a case like this one or only an alternative to disgorgement. Perhaps answering that question was not crucial to deciding those cases, just as it is not crucial to our decision today.

measure or extent of the damages." *Ga. Ports Auth. v. Servac Intl.*, 202 Ga. App. 777, 780 (3) (415 SE2d 516) (1992) (citation and punctuation omitted). As we have cautioned before, "[m]ere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted." Id. (citation and punctuation omitted). That difficulty in calculating precisely the damages sustained will not preclude their recovery is especially true when it is the conduct of the wrongdoer that prevents a more precise calculation. See *Bigelow v. RKO Radio Pictures*, 327 U. S. 251, 264-266 (66 SC 574, 90 LE 652) (1946).

If this measure of damages, rather than a disgorgement, is the more appropriate measure of damages — that is, if the measure is what Bruce lost and not what Mail Source gained — the revenues and profits earned by Mail Source from business opportunities that Corporate Mail lost to it would not be dispositive of the amount of damages Bruce might be entitled to recover. But that does not mean that the revenues and profits of Mail Source are irrelevant to the proper measure of damages. Indeed, some reasonable person might say the revenues and profits Mail Source earned from the same business opportunities could be a fair approximation of the revenues that Corporate Mail would have earned from them and are, therefore, probative of the lost revenue and profit of Corporate Mail, at least if there is some evidence that Mail Source and Corporate Mail have similar pricing structures and costs. Robbie and Mail Source would be entitled to respond, of course, that Corporate Mail could not have charged its customers the same price as Mail Source, or could not have done the same volume of work as Mail Source, or would not have earned the same profit as Mail Source, but those are all matters for a jury. At the least, the revenues earned by Mail Source might be probative of the volume of work performed by Mail Source to the extent that more revenue is earned for doing more work, something the parties do not dispute. There may be reasons in this case why such evidence ultimately might not be admitted at trial,[7] but we are reviewing the denial of a motion to compel, not a

---

[7] If the proper measure of damages is what Corporate Mail lost, not what Mail Source gained, Bruce would have to prove these lost profits with reasonable certainty. Especially considering that Corporate Mail never made much money, if any, this requirement may be an obstacle that Bruce cannot overcome. See *Kitchen v. Hart*, 307 Ga. App. 145, 152-153 (2) (704 SE2d 452) (2010) (anticipated profits ordinarily are too speculative to be recovered unless the business has been established, has made profits, and there are definite, certain and reasonable data for the ascertainment of the profits); *Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 747-748 (686 SE2d 364) (2009) (company generally is required to show

judgment for money damages or a ruling admitting certain proof of damages at trial. It is enough to decide that the revenues and profits of Mail Source might very well have some relevance to the proper measure of damages in this case.

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

OCGA § 9-11-26 (b) (1). We do not decide whether and to what extent Bruce is entitled to the precise financial information he requested in his interrogatories or the precise financial records he requested that Mail Source produce. Those things are committed to the discretion of the trial courts, and we will leave them for the court below to address on remand. But the court below erred when it concluded that the revenues and profits that Mail Source earned from business opportunities lost by Corporate Mail could not possibly be probative of the damages that Bruce may be entitled to recover and that Bruce, for this reason, cannot have any discovery of the finances of Mail Source. Accordingly, we vacate the order of June 22, 2010, denying the motion to compel, and we remand for the court below to reconsider the motion to compel in light of our opinion.[8]

*Judgment vacated and case remanded with direction. Smith, P. J., and Dillard, J., concur.*

DECIDED JULY 12, 2011.

*Bryman & Clerke, David N. Bryman*, for appellant.

---

a "proven track record of profitability" to recover lost profits). But that is an issue not yet ripe for resolution.

[8] We note that the court below also said in its order that, "to calculate his damages, [Bruce] would have to rely on expert opinion." An expert witness might be able to provide better evidence of the profits, if any, that Corporate Mail lost (or the revenues and profits that Mail Source gained from any wrongful conduct), and perhaps the evidence about lost or ill-gotten profits would be so confusing that a jury would need an expert to understand it. But we are aware of no requirement of expert proof in all cases involving lost profits, and we cannot say today that an expert absolutely is required in this case. See generally *Triad Drywall*, 300 Ga. App. at 749 (noting that company must provide jury with "sufficiently specific guidelines" for making an accurate calculation of its lost profits, but not holding explicitly that expert is required to provide this proof); *Freightliner Chattanooga, LLC v. Whitmire*, 262 Ga. App. 157, 162 (1) (b) (584 SE2d 724) (2003) (lost profits proved without the use of an expert).