**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 16, 2015**

# In the Court of Appeals of Georgia

A14A1950. EZ GREEN ASSOCIATES, LLC v. GEORGIA-PACIFIC CORPORATION

DILLARD, Judge.

This litigation arises from a contractual dispute between the parties regarding a proprietary system for applying grass seed.[1] EZ Green Associates, LLC ("EZ Green") brought this action for breach of contract and a covenant of fair dealing against Georgia-Pacific Corporation, its assignee, GP Cellulose, LLC (f/k/a Koch Cellulose, LLC), and BlueYellow, LLC, a GP Cellulose subsidiary (collectively "Georgia-Pacific"). In a prior appeal, we reversed the trial court's grant of summary judgment in favor of Georgia-Pacific, finding that conflicts in the evidence required

---

[1] By motion and order of this Court, the briefs were filed under seal.

EZ Green's claims to be resolved by a jury.[2] Upon remand to the trial court, EZ Green proposed three methods for calculating its damages, and Georgia-Pacific filed a pretrial motion to exclude those methods. The trial court granted the motion as to the first two methods and granted it, in part, as to the third method. In this interlocutory appeal, EZ Green argues that the trial court erred in finding that it failed to present evidence that its track record of sales had been tainted by Georgia-Pacific's misconduct; by excluding the "commercially reasonable" benchmarks set forth in the contract for damages purposes; and by excluding Georgia-Pacific's own projections of expected sales. EZ Green also argues that the trial court's order contravenes public policy.[3] For the reasons set forth *infra*, we affirm.

---

[2] *See EZ Green Assocs., LLC v. Georgia-Pacific Corp.*, 318 Ga. App. 655 (734 SE2d 485) (2012).

[3] EZ Green further argues that, to the extent that Georgia-Pacific's motion is considered by this Court to be a motion in limine, the trial court erred in granting it. As to this argument, we note that a pretrial motion regarding the admissibility of evidence is indeed a motion in limine, and as such, we will review the trial court's order under the standard of review applicable to such motions. *See Andrews v. Willbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995) (noting that "[a] motion in limine is a pretrial method of determining the admissibility of evidence"); *Collins v. Mitchell*, 282 Ga. App. 860, 862 (2) (640 SE2d 364) (2006) (reviewing the denial of a motion to exclude evidence as a motion in limine).

The record reveals that EZ Green and Georgia-Pacific originally entered into an agreement in 2003 regarding the sale of a product developed by EZ Green, which the parties revised on April 30, 2004.[4] The contract provided that, for a period of five years, EZ Green would license its product to Georgia-Pacific, and in exchange, Georgia-Pacific agreed to make "commercially reasonable efforts" to market and sell the product. To that end, Section 7.3 (a) of the contract set forth specific benchmarks for the volume of sales that the parties expected to achieve each year. And if Georgia-Pacific achieved these goals, it would be deemed to have fulfilled its obligations under the agreement.[5]

In 2006, a large national retailer agreed to test the product in its stores, but there was a substantial delay in placing the product with the retailer.[6] In 2005, before the product was sold in these stores, Georgia-Pacific compiled a PowerPoint presentation, detailing its sales projections with the large retailer, which were based

---

[4] *See EZ Green Assocs., LLC*, 318 Ga. App. at 655.

[5] It is undisputed by the parties, and this Court previously found, that Georgia-Pacific failed to meet these benchmarks. *See id*. at 658 (1) (a) ("The parties expressly agreed in the contract that the achievement of a certain yearly volume of sales would demonstrate 'commercially reasonable efforts,' and that volume was not met.").

[6] *See id*.

on the amount of sales that EZ Green's product had previously generated in a smaller market. Eventually, the product was sold by the large retailer, but in the summer of 2007, executives from that retailer advised Georgia-Pacific that sales of the product were well below their expectations, and accordingly, EZ Green would have to requalify to have its product sold in their stores.

Subsequently, EZ Green sued Georgia-Pacific for breach of contract and the covenant of fair dealing, alleging that Georgia-Pacific breached the agreement by ceasing production of the product and by failing to market it.[7] Discovery ensued, and prior to trial, EZ Green supplemented its response to Georgia-Pacific's first set of interrogatories. In doing so, EZ Green proposed three methods for calculating damages in the event that the jury ruled in its favor. Specifically, EZ Green proposed to base its calculations on (1) the difference between the actual track record of performance and the anticipated amount of sales as measured by the benchmarks set forth in the contract; (2) the difference between the actual track record of sales and Georgia-Pacific's projections of expected sales as set forth in Georgia-Pacific's PowerPoint presentation; and (3) EZ Green's "tainted" track record of sales with the major retailer over an 18-month period.

---

[7] *See id.* at 655.

In response, Georgia-Pacific filed a motion to exclude EZ Green's proposed calculation methods, arguing that they were not based on any actual track record of sales, as required by Georgia law. The trial court granted the motion as to the first two methods, finding that they were too speculative, unreliable, and failed to account for market realities. Further, the court granted the motion, in part, as to the third method, finding that EZ Green could use the method, but that it must reduce the amount of its lost royalties by any expenses that it would have incurred had the lost profits been realized.

EZ Green then filed a request for a certificate of immediate review, which the trial court granted. Thereafter, EZ Green filed in this Court an application for an interlocutory appeal, which we granted. This appeal follows.

At the outset, we note that a trial court's ruling on a motion in limine is reviewed only for an abuse of discretion.[8] Indeed, we have recognized that the admission or exclusion of evidence is "within the sound discretion of the trial court," but "the grant of a motion in limine excluding evidence is a judicial power which

_____

[8] *See Cartledge v. Montano*, 325 Ga. App. 322, 324 (750 SE2d 722) (2013); *Collins*, 282 Ga. App. at 862 (2).

5

must be exercised with great care."[9] With these guiding principles in mind, we turn now to EZ Green's claims of error.

1. EZ Green first argues that the trial court erred in holding that it failed to present evidence that its track record of sales was "tainted" by Georgia-Pacific's misconduct. Further, EZ Green contends that, because Georgia-Pacific's breach was "so complete," it will never know the exact amount of its lost profits. This claim is without merit.

As an initial matter, we note that, although the parties briefed the issue below, the trial court did not address whether EZ Green's track record of sales was tainted by Georgia-Pacific's alleged wrongdoing. Instead, the trial court found that EZ Green "generically" made this allegation, without providing further explanation for why its actual sales figures were so unreliable that they should be disregarded entirely. On appeal, EZ Green challenges this finding, but fails to cite to any actual evidence in the record to show that the trial court erred in this regard.[10] Indeed, EZ Green

---

[9] *Bryan v. Brown Childs Realty Co.*, 252 Ga. App. 502, 506 (1) (b) (556 SE2d 554) (2001); *accord Homebuilders Ass'n of Georgia v. Morris*, 238 Ga. App. 194, 195 (518 SE2d 194) (1999).

[10] *See Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010) (noting that "[t]he burden is upon the party alleging error to show it affirmatively in the record" (punctuation omitted)); *Redford v. Collier Heights Apartments*, 298 Ga. App.

summarily lists four ways in which Georgia-Pacific's conduct tainted its track record of sales, but then cites only to this Court's previous opinion reversing summary judgment and two pages of the contract. However, our prior opinion and the contract are not evidence of Georgia-Pacific's alleged misconduct. And because EZ Green fails to cite to any evidence in the record, which consists of 33 volumes and more than 7,000 pages,[11] to support its argument that it submitted sufficient evidence to show that Georgia-Pacific tainted its track record of sales, we are unable to review this claim of error.[12]

Furthermore, to the extent EZ Green argues that, if its track record of sales is found to have been tainted by Georgia-Pacific's wrongdoing, it should then be allowed to use projections of anticipated profits to calculate its damages, this

116, 117 (679 SE2d 120) (2009) (explaining that "[i]t is well established that the burden is on the party alleging error to show it affirmatively by the record and where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm" (punctuation omitted)); Court of Appeals Rule 25 (c) (2) (providing that "each enumerated error shall be supported in the brief by specific reference to the record or transcript [and] [i]n the absence of such reference, the Court will not search for or consider such enumeration").

[11] The voluminous record at issue is from EZ Green's prior appeal in Case No. A12A0919.

[12] *See Bennett*, 305 Ga. App. at 416; *Redford*, 298 Ga. App. at 117.

7

argument is entirely unsupported. Indeed, EZ Green points us to no Georgia authority remotely suggesting that, if a defendant's conduct taints a plaintiff's track record of sales, we may disregard our long-standing precedent,[13] set forth in Division 2 *infra*, forbidding plaintiffs from proving lost profits by speculative or uncertain means.[14] As such, EZ Green is not exempt from the requirement that it must prove its damages to a reasonable degree of certainty.

Lastly, as to EZ Green's argument that Georgia-Pacific's breach was "so complete" that it will never know the exact amount of its damages, we note that the trial court did not find that EZ Green must prove the *exact* amount of its damages to

---

[13] *Cf. Shaw v. Ruiz*, 207 Ga. App. 299, 303-04 (11) (428 SE2d 98) (1993) (requiring plaintiff to show a proven track record of profitability when (as in this case) plaintiff alleged that lost profits were due to defendant's failure to use reasonable efforts to generate sales).

[14] In arguing that it should be permitted to use damage-calculation methods based on anticipated profits as a result of Georgia-Pacific tainting its sales record, EZ Green relies on *McMillian v. McMillian*, 310 Ga. App. 735 (713 SE2d 920) (2011), where we noted that the rule that "difficulty in calculating precisely the damages sustained will not preclude their recovery is especially true when it is the conduct of the wrongdoer that prevents a more precise calculation." *Id.* at 740. However, we also emphasized in *McMillian* that lost profits must still be proved within a reasonable degree of certainty, that anticipated profits are ordinarily too speculative to be recovered, and that a company is generally required to establish a proven track record of profitability. *See id.* at 740 n.7. Thus, we cautioned that because the company "never made much money," proving lost profits could be an obstacle to recovery of damages that it could not overcome. *Id.*

8

a mathematical certainty. Instead, it found only that EZ Green must base its damages-calculation methods on its actual track record of sales, less any expenses it would have incurred had it realized those profits.[15] As such, EZ Green's argument bears no relation to the trial court's ruling, and therefore is of no consequence.

2. Next, EZ Green argues that the trial court erred by excluding the "commercially reasonable" benchmarks set forth in Section 7.3 (a) of the contract for damages purposes, as well as Georgia-Pacific's sales projections as contained in its 2005 PowerPoint presentation.[16] We disagree.

In Georgia, the general rule as to the recoverability of lost profits as an item of damages is that "the expected profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain."[17] Nevertheless, when the type of

---

[15] *See Shaw*, 207 Ga. App. at 304 (11) ("To recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." (punctuation omitted)); *accord Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 746 (686 SE2d 364) (2009).

[16] Because they are closely related, we address EZ Green's second and third enumerations of error together.

[17] *Johnson County Sch. Dist. v. Greater Savannah Lawn Care*, 278 Ga. App. 110, 112 (629 SE2d 271) (2006) (punctuation omitted); *see also SMD, L.L.P. v. City of Roswell*, 252 Ga. App. 438, 441 (2) (555 SE2d 813) (2001) ("As a general rule, expected profits of commercial business are too uncertain, speculative, and remote

9

business and history of profits make "the calculation of profits reasonably ascertainable, lost profits may be recovered."[18] Thus, generally speaking, lost profits may be recovered by a business only if "the business has a proven track record of profitability."[19]And although the amount of damages need not be calculated with exact mathematical certainty,[20] a litigant must nonetheless establish lost profits with

to permit recovery for their loss.").

[18] *Johnson County Sch. Dist.*, 278 Ga. App. at 112 (punctuation omitted); *see also SMD, L.L.P.*, 252 Ga. App. at 441 (2) ("[W]hile anticipated profits of an unestablished future business are generally too speculative for recovery, [when] the business has been long established, has uniformly made profits, and there are definite, certain, and reasonable data for their ascertainment, they may be recovered at least for a limited reasonable future time, even though they cannot be computed with exact mathematical certainty.").

[19] *Johnson County Sch. Dist.*, 278 Ga. App. at 112-13 (punctuation omitted); *see also Triad Drywall, LLC*, 300 Ga. App. at 747 (finding that plaintiff was required to show a "proven track record of profitability" to recover lost profits); *Springwell Dispensers, Inc. v. Hall China Co.*, 204 Ga. App. 245, 245 (419 SE2d 112) (1992) (holding that new business with "no track record of profitability" was not entitled to recover lost profits as to a breach-of-contract claim).

[20] *See Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc*., 262 Ga. App. 826, 831 (4) (586 SE2d 726) (2003) (finding that lost profits can be recoverable even when they can not be determined with "exact mathematical certainty"); *B.H. Levy Bro. & Co. v. Allen*, 53 Ga. App. 246 (185 SE 369, 370) (1936) ("While the anticipated profits of an unestablished future business are generally too speculative for recovery, yet, where the business has been long established, has uniformly made profits, and there are definite, certain, and reasonable data for their ascertainment, and such profits reasonably must have been in contemplation of the parties at the time of

a reasonable degree of certainty.[21] And in the case *sub judice*, EZ Green's first and second proposed calculation methods simply do not satisfy this standard.

Here, the benchmarks set forth in Section 7.3 (a) of the agreement essentially establish a safe harbor for Georgia-Pacific by providing that, if the product met or exceeded a certain amount of anticipated sales each year, it would be deemed to have satisfied its contractual obligation to use commercially reasonable means to market and sell the product. Similarly, Georgia-Pacific's 2005 PowerPoint presentation set forth its anticipated sales figures for EZ Green's product after the product's placement with a major retailer. And before the trial court, EZ Green sought to use those sales projections to calculate an estimate of its lost profits due to Georgia-Pacific's alleged breach of the agreement.

But as previously noted, in Georgia, it is well settled that anticipated profits are too speculative and uncertain to be recoverable unless they are based on an *actual*

---

the contract, they may be recovered at least for a limited reasonable future time, even though they cannot be computed with exact mathematical certainty.").

[21] *See Bldg. Materials Wholesale, Inc. v. Triad Drywall, LLC*, 287 Ga. App. 772, 775-76 (2) (653 SE2d 115) (2007) (explaining that plaintiff was required to show lost profits with "reasonable certainty"); *Mkt. Place Shopping Ctr., L.P. v. Basic Bus. Alternatives, Inc.*, 227 Ga. App. 419, 422 (2) (489 SE2d 162) (1997) (noting that, to recover lost profits, they must be established with "reasonable certainty").

track record of sales.[22] And this requirement is based on the rationale that "[t]he profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford

[22] *See Kitchen v. Hart*, 307 Ga. App. 145, 152 (2) (704 SE2d 452) (2010) ("Ordinarily, anticipated profits are too speculative to be recovered, but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits were in the contemplation of the parties at the time of the contract, they may be recovered even though they can not be computed with exact mathematical certainty." (punctuation omitted)); *accord KAR Printing, Inc. v. Pierce*, 276 Ga. App. 511, 511-12 (623 SE2d 704) (2005); *see also Johnson County. Sch. Dist.*, 278 Ga. App. at 113 (explaining that the exception to the rule that expected profits of a commercial business are too uncertain and speculative to afford a basis for damages is when the "type of business and history of profits make the calculation of profits reasonably ascertainable"); *Witty v. McNeal Agency, Inc.*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999) (recognizing the general rule that "when the owner of a business seeks to recover lost profits, that recovery can be had only if the business has a proven track record of profitability" (punctuation omitted)); *Topvalco, Inc. v. Garner*, 210 Ga. App. 358, 361 (3) (436 SE2d 25) (1993) ("A distinction is drawn between claims for profits derived from a new business venture and those derived from a going concern. The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered, and does not meet the legal standard of reasonable certainty." (punctuation omitted)); *Bowdish v. Johns Creek Assocs.*, 200 Ga. App. 93, 96 (4) (406 SE2d 502) (1991) (finding that a business's "proven 'track record' of profitability" supported the trial court's award of lost profits); *Molly Pitcher Canning Co. v. Cent. of Georgia Ry. Co.*, 149 Ga. App. 5, 13 (4) (253 SE2d 392) (1979) (affirming trial court's order excluding evidence of anticipated profits when there was no evidentiary basis to accurately compute such profits).

a basis for the computation of damages."[23] Here, EZ Green's first two proposed calculation methods are based solely on anticipated or expected profits, not any actual track record of sales or history of profitability with the large retailer.[24] Indeed, the contract and PowerPoint presentation were both drafted *before* EZ Green made any sales with the major retailer, and they merely set forth the amount of sales that the parties anticipated would be achieved in the future. Under such circumstances, EZ Green's first two proposed calculation methods are simply too speculative, remote, and uncertain to be recoverable.[25] As such, the trial court did not err in excluding them.

3. Lastly, EZ Green argues that the trial court's order contravenes our state's public policy. Again, we disagree.

Specifically, EZ Green asserts that Georgia-Pacific's conduct in this case is "deplorable," and that if we affirm the trial court's order, the "lesson" from our

---

[23] *Johnson County. Sch. Dist.*, 278 Ga. App. at 112 (punctuation omitted); *accord Molly Pitcher Canning Co.*, 149 Ga. App. at 10-11 (4).

[24] As noted *supra*, EZ Green's third calculation method was based on its actual track record of sales with the major retailer, and the trial court ruled that EZ Green could use this method so long as it reduced any amount of lost profits by the expenses it would have incurred had those profits been realized.

[25] *See supra*, note 22.

13

opinion will be that large companies can breach contracts with impunity. It also contends that Georgia-Pacific should not be immune from recovery under Georgia law merely because the amount of lost profits is incapable of "exact calculation."

First, because EZ Green did not develop a cogent argument or cite to any authority to support its claim, we need not address it.[26] Nevertheless, as explained in Division 1 *supra*, neither the trial court nor this Court has indicated that EZ Green must prove the *exact* amount of its lost profits (*i.e.*, to a "mathematical certainty"), as it is only required to prove such profits with "reasonable certainty."[27] And in any event, we are not at liberty to disregard well-settled and binding precedent merely because EZ Green disagrees with the results of its straightforward application in this case. Stare decisis may not be "an inexorable command,"[28] but the application of this venerable doctrine is "essential to the performance of a well-ordered system of

---

[26] *See Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 327 Ga. App. 245, 251 (3) (758 SE2d 145) (2014) (declining to address a claim of error when appellant failed "to provide any cogent argument or citation of authority"); *Blanton v. State*, 324 Ga. App. 610, 615 (2) (a) n.10 (751 SE2d 431) (2013) (finding that appellant abandoned a claim by failing to cite any authority to support it); Court of Appeals Rule 25 (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[27] *See supra*, notes 20 & 21.

[28] *Lejeune v. McLaughlin*, ___ Ga. ___ (2) (766 SE2d 803) (2014).

jurisprudence,"[29] and we see no compelling reason to revisit or revise this aspect of our jurisprudence.[30]

For all of the foregoing reasons, we affirm the trial court's grant of Georgia-Pacific's motion to exclude EZ Green's proposed methods of calculating damages.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[29] *Benefield v. Tominich*, 308 Ga. App. 605, 613 (708 SE2d 563) (2011) (Blackwell, J., concurring dubitante) (punctuation omitted).

[30] *See State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("[T]he doctrine of stare decisis is an important principle that promotes the rule of law . . . .")

15