A99A1830. HANSFORD v. BURNS et al.
(526 SE2d 896)

ELLINGTON, Judge.

Derrick Hansford sued Ronald Gatskie, R & G Services, Inc. and Joan and Ben Burns for various torts and alleged violations of the Commercial Code in connection with a series of secured transactions. The trial court granted the defendants' motions for summary judg-

ment and denied Hansford's motion for summary judgment. Hansford appeals. Because we conclude that material questions of fact remain, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. ·

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in this light, the record shows that on March 31, 1994, Joan Burns sold two dry cleaning businesses to Hansford[1] for $150,000. Hansford paid Burns $50,000 in cash and gave her an installment note for $100,000 secured by the businesses' assets ("the first Hansford note"). Burns filed UCC-1 financing statements to perfect her security interest in the businesses. As the broker for both Joan Burns and Hansford, Ben Burns earned a commission of $10,000 which Hansford paid in full.

On July 21, 1995, Hansford sold the businesses to Gatskie for $160,000. As the broker for both Hansford and Gatskie, Ben Burns earned a commission of $16,000 which Hansford paid in cash. Gatskie paid Hansford $80,000 in cash and gave Hansford an installment note for $80,000 ("the Gatskie note"). As part of the same transaction, Hansford paid Joan Burns $64,000 which left a principal balance of $8,507.94 on the $100,000 note. Hansford gave Burns an installment note for $8,507.94 ("the second Hansford note") which was secured by an assignment of the $80,000 Gatskie note. In the assignment of the Gatskie note, Gatskie was directed to make payments on his $80,000 debt to Hansford directly to Burns in satisfaction of Hansford's debt to Burns. Hansford filed UCC-1 financing statements to perfect his security interest in the businesses. Burns never filed UCC-3 forms showing that her security interest in the businesses had terminated. See OCGA § 11-9-404.

As directed, Gatskie made a number of payments to Joan Burns. Gatskie then defaulted on his debt to Hansford, leaving a principal balance of $5,771.59 on the second Hansford note. Hansford did not cure the default. On December 5, 1995, Burns sent Hansford a notice

---

[1] Hansford initially bought the businesses with a partner, Vincent Cumberbatch. Cumberbatch later abandoned his share to Hansford, and Hansford took over sole responsibility for the note.

of default on the second Hansford note. On January 17, 1996, Burns filed suit on the second Hansford note, seeking the outstanding principal balance of $5,771.59 plus interest. On May 13, 1996, Hansford filed a petition for personal bankruptcy under Chapter 13 of the Bankruptcy Code. Hansford's bankruptcy plan was confirmed on June 27, 1996. On July 17, 1996, Burns sent Hansford a notice which stated that he was in default on the second Hansford note and that if the debt were not paid within ten days, she would "commence foreclosure on the Security Agreement, and taking [sic] back the collateral which [was] secured by the UCC Financing Statement." On September 10, 1996, Burns sent a notice to Hansford and Gatskie which stated that because they were in default on the July 21, 1995 security agreement, "and pursuant to O.C.G.A. Section 11-9-504," Burns had "exercised her right to retake the collateral" and that unless the collateral were redeemed by September 25, Burns would "proceed to dispose of the collateral at a private sale."

On September 26, 1996, R & G Services, which was wholly owned by Gatskie, paid Joan Burns $9,855.31.[2] In the "contract for sale of business," Burns warranted that she had marketable title to the assets of the businesses free and clear of any other indebtedness. R & G Services immediately sold the businesses to Sarah Slaughter for $135,000. As the broker for Gatskie, Ben Burns earned a commission of $7,250. A few weeks later, Joan Burns filed UCC-3 forms "by assignment" to terminate Hansford's security interest in the businesses.

1. The trial court erred in granting Joan Burns' motion for summary judgment on Hansford's claim that she wrongfully failed to terminate her security interest in the businesses.

The first Hansford note was paid in full when Hansford tendered, and Joan Burns accepted, a new note for the balance. Because there was no outstanding secured obligation under the first Hansford note, OCGA § 11-9-404 required Burns to file UCC-3 forms reflecting the termination of her security interest in the collateral (the businesses) within 60 days. There was no evidence before the trial court that Burns filed UCC-3 forms within the time allowed. Therefore Burns was not entitled to judgment as a matter of law on Hansford's claim for OCGA § 11-9-404 statutory and actual damages.

2. The trial court erred in granting summary judgment to Joan and Ben Burns on Hansford's claim for damages arising from the private sale of the businesses which were the collateral for the Gatskie note. The trial court concluded that Burns' foreclosure on the busi-

---

[2] The amount paid represented $5,771.59 principal balance and $484.22 interest on the second Hansford note plus $3,099.50 attorney fees.

nesses was authorized by OCGA § 11-9-505. Under the procedure of strict foreclosure, a creditor in possession may retain the collateral in satisfaction of the debt. OCGA § 11-9-505 (2). To proceed under OCGA § 11-9-505 (2), a creditor must give notice to the debtor of its proposal to retain the collateral in satisfaction of the debt. Id. The debtor then has 21 days to object to that proposal. Id. If the debtor objects, then the creditor must dispose of the collateral in compliance with OCGA § 11-9-504, that is, in a commercially reasonable manner. Id. This procedure protects the debtor's right to mitigate his loss when the collateral is worth more than the debt. *Chen v. Profit Sharing Plan &c.*, 216 Ga. App. 878, 880 (1) (456 SE2d 237) (1995).

In this case, the trial court specifically found that Burns "complied with the notice provisions of OCGA § 11-9-505 (2)." Even assuming that the assignment of the Gatskie note gave Burns the authority to foreclose on the businesses, the record does not support the trial court's finding. Burns never gave Hansford notice that she intended to retain the collateral *in satisfaction of the debt.* "The written notice required by OCGA § 11-9-505 (2) must clearly state the creditor's proposal to retain the collateral in satisfaction of the debt and must notify the debtor that he has 21 days in which to raise an objection to such a proposal." (Citations omitted.) *Chen*, 216 Ga. App. at 880 (1).

In this case, the July 17, 1996 notice letter referred to "taking back the collateral" but did not say that retention of the collateral would be *in satisfaction of the debt*, nor did the letter refer specifically to OCGA § 11-9-505. The September 10, 1996 notice invoked OCGA § 11-9-504 and indicated that Burns had retaken the collateral and intended to sell it at a private sale. Again, the notice did not say that retention of the collateral would be *in satisfaction of the debt*, nor did it refer specifically to OCGA § 11-9-505. Because Burns has identified no communication which would constitute notice that the collateral would be retained *in satisfaction of the debt*, she did not act under the authority of OCGA § 11-9-505. Anderson, Uniform Commercial Code, Vol. 9A, § 9-505:37, p. 677. Therefore, Burns never acquired fee simple title to the businesses and could not sell them to Gatskie as she purported to do. *MTI Systems Corp. v. Hatziemanuel*, 542 NYS2d 710, 711 (1989) (secured party may become the legal owner of collateral after default only by retaining the collateral in satisfaction of the debt in compliance with UCC § 9-505 (2) *or* by purchasing the collateral at a sale).

Because Burns failed to comply with the strict foreclosure procedure provided by OCGA § 11-9-505, the foreclosure was governed by OCGA § 11-9-504. *Chen*, 216 Ga. App. at 880 (1). Any disposal of collateral under OCGA § 11-9-504 must be commercially reasonable. OCGA § 11-9-504 (3). Generally, "the issue of commercial reason-

ableness is to be decided by the trier of fact." *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 713-714 (3) (320 SE2d 784) (1984). In this case, the secured party (Joan Burns) sold the collateral at a private sale, and within hours the buyer (Gatskie) resold the collateral to a third party for more than 13 times what he paid. There was no evidence before the trial court that Burns solicited more than one buyer. Hansford carried his burden in opposing summary judgment of identifying evidence that the sale of the collateral was not commercially reasonable.

Where a sale of collateral does not comply with OCGA § 11-9-504, the debtor can recover actual damages under OCGA § 11-9-507 for any loss caused by an inadequate sale price. *Willis v. Healthdyne*, 191 Ga. App. 671, 673 (1) (382 SE2d 651) (1989). Because Hansford raised a question of fact regarding whether Burns' disposition of the collateral was commercially reasonable, the trial court erred in granting Burns' motion for summary judgment on Hansford's claim for damages from the sale of the collateral.

3. The trial court erred in granting summary judgment to Gatskie and R & G Services on Hansford's suit on the Gatskie note. The trial court concluded that Hansford failed to properly disclose the existence of the Gatskie note to the bankruptcy court. Applying *Byrd v. JRC Towne Lake*, 225 Ga. App. 506 (484 SE2d 309) (1997), the trial court ruled that because Hansford failed to list the Gatskie note in his Chapter 13 petition, he was judicially estopped from pursuing that claim later.

The record, however, does not support the trial court's conclusion that as a matter of law Hansford failed to disclose the claim. Before filing his Chapter 13 petition, Hansford transferred the Gatskie note to a corporation, HanJa, Inc. Before Hansford's Chapter 13 plan was confirmed on June 27, 1996, Hansford filed an amendment to the plan which showed that within one year of filing for bankruptcy Hansford had sold a business for $80,000 cash and a promissory note of $80,000 which was in default. On February 5, 1998, after Hansford's Chapter 13 plan was confirmed, but before all payments under the plan were completed, the bankruptcy court conducted a hearing on Hansford's motion to employ certain counsel. After a discussion about the Gatskie note, the bankruptcy court suggested that the note should be conveyed back to Hansford and any proceeds distributed to Hansford's creditors. On February 9, 1998, HanJa, Inc. transferred the Gatskie note to Hansford. On February 13, 1998, Hansford filed an amendment to his Chapter 13 petition, adding the Gatskie note to the schedule of debtor's personal property as an account receivable. All of these events, which were documented in the record before the trial court, occurred before the bankruptcy case was concluded. Therefore, the trial court erred in concluding that Hansford did not

disclose his claim under the Gatskie note "in the bankruptcy case" as required by *Byrd*. "Under such circumstances, it cannot be said as a matter of law that plaintiff intentionally attempted to manipulate and deceive the court system, or that he was attempting to make a mockery of the system through inconsistent pleading." *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1996). Accordingly, the trial court erred in applying the doctrine of judicial estoppel to bar Hansford's suit on the Gatskie note.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 13, 1999.

*Weinstock & Scavo, Michael Weinstock, Jeffrey P. Yashinsky, Elizabeth M. Jaffe, Mark I. Sanders*, for appellant.
*Joe M. Harris, Jr., John W. Mrosek*, for appellees.