## A11A1347. ROBERTS v. CONNELL et al.
(718 SE2d 862)

BARNES, Presiding Judge.

During Candiss Roberts' appointment with Dr. Judson T. Connell for crown restorations, her lower lip was lacerated when an instrument slipped during the procedure. She claimed that the injury resulted in scarring, a lip droop, nerve and sensory deficits, and chronic pain, and sued the dentist for malpractice, breach of contract, lack of informed consent/battery and negligence per se. Roberts appeals from the trial court's order granting summary judgment to Connell on her claim of lack of informed consent.

To prevail at summary judgment under OCGA § 9-11-56,

the moving party must demonstrate that there is no genu-

---

ine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. Further, any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment. When this Court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence.

(Footnotes omitted.) *Beasley v. Northside Hosp.*, 289 Ga. App. 685, 685-686 (658 SE2d 233) (2008).

The facts relevant to this appeal show that the affidavit of Roberts' expert, Mark Benner, D.D.S., was attached to Roberts' complaint pursuant to OCGA § 9-11-9.1. The dentist averred that Connell practiced below the standard of care "[b]y failing to maintain control over the dental instrument he was using to remove excess cement after seating crowns . . . thereby resulting in and allowing the instrument to lacerate Candiss Roberts' lower lip." Connell filed a motion to strike the affidavit and to dismiss the complaint with prejudice. Connell subsequently withdrew the motion to strike the expert's affidavit and to dismiss the malpractice claim. Roberts, thereafter, dismissed her claims of battery, breach of contract, and negligence per se; after which, there were only two remaining claims in the case — medical malpractice and informed consent.

At the hearing on the motion to dismiss, the parties proceeded exclusively on the informed consent issue. At the hearing, Roberts conceded that "basic" consent was obtained in this case because she had signed a "consent to treatment" form; thus, she had withdrawn her battery claim, However, Roberts maintained that there remained two "distinct and mutually exclusive" informed consent claims — (1) "malpractice standard of care informed consent" inherent within the standard of care of the practice of dentistry, and (2) statutory informed consent predicated on OCGA § 31-9-6.1 because Connell supplied "major regional anesthesia" to an area of her mouth in connection with the crown procedures.

Following the hearing, the trial court granted partial summary

judgment to Connell on Roberts' informed consent claims, finding that

> [t]here is no common law duty of informed consent in Georgia; instead, a physician's duty to disclose certain information and thereafter obtain a patient's consent was created by the Legislature and codified at OCGA § 31-9-6.1. ... Subsection (a) limits such claims to procedures involving "general anesthesia, spinal anesthesia, or major regional anesthesia." Of the three forms of anesthesia listed, at issue here is whether [Roberts] was administered "major regional anesthesia." ... To include the mouth and jaw within the meaning of "major regional anesthesia" would go beyond the explicit definition of "major region."

On appeal, Roberts contends that the trial court erred in granting partial summary judgment to Connell on the informed consent claim. She asserts that there are separate and distinct methods to the pursuit of an informed consent case that the trial court failed to consider — the standard inherent to a malpractice claim, and the statutory standard.

1. Regarding the informed consent inherent within the malpractice claim, Roberts argues that "[t]he concept and requirement of informed consent is included within the definition of the standard of care in medical malpractice actions under Georgia law." Roberts maintains that Connell testified that the standard of care for his practice required him to obtain the patient's informed consent to treatment and inform the patient as to, among other things, diagnosis, recommended treatment, alternative procedures, and expected outcome. Roberts' claim, which is essentially a claim that there is a common law duty to obtain informed consent, is without merit.

> "Consent" in a medical context involves two distinct legal principles. One is "basic" consent, or that consent to a touching which avoids a battery. A medical touching without consent constitutes the intentional tort of battery for which an action will lie. The other consent is "informed" consent, which addresses the autonomy of a competent patient to determine what medical treatment he will allow or refuse. Informed consent essentially involves a medical professional fully informing a patient of the risks of and alternatives to the proposed treatment so that the patient's right to decide is not diminished by a lack of relevant information.

(Footnotes omitted.) *Pope v. Davis*, 261 Ga. App. 308, 309 (1) (582 SE2d 460) (2003).

Our Supreme Court expressly stated in *Albany Urology Clinic v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000), that Georgia does not recognize a common law duty to inform patients of the material risks of a proposed treatment or procedure. The Court explained:

> Prior to 1988, Georgia physicians were not required to disclose to their patients any of the risks associated with a particular medical treatment or procedure. Hence, before 1988, a physician's "silence as to risk" was not actionable and could not be the basis of a patient's claim of fraud. Although a physician did then and does now have a common law duty to answer truthfully a patient's questions regarding medical or procedural risks, absent such inquiry the common law of this state does not designate the failure to disclose such risks a fraud that may vitiate a patient's consent to medical procedures. As established by pre-1988 precedent, under the common law, evidence of a failure to reveal the risks associated with medical treatment is not even admissible in support of a claim for professional negligence.

(Footnotes omitted.) Id. at 298 (1).

Thus, as "the doctrine of informed consent for health procedures and treatment is defined in Georgia exclusively by statutes and regulations," *Blotner v. Doreika*, 285 Ga. 481, 484 (2) (678 SE2d 80) (2009), this claim is meritless.

2. Roberts also argues that because her dental procedure involved "general anesthesia, spinal anesthesia, or major regional anesthesia," Connell had a statutory duty to obtain her informed consent.

Per OCGA § 31-9-6.1,

> any person who undergoes any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia . . . must consent to such procedure and shall be informed [of the diagnosis, nature, and purpose of the surgical or diagnostic procedure, material risks of the procedure, likelihood of success, the practical alternatives to the procedure, and the prognosis if the procedure is rejected].

See OCGA § 31-9-6.1 (a) (1)-(6).

Roberts maintains that she was administered "major regional

anesthesia" during her procedure. She bases her allegation primarily on Connell's affirmative response during his deposition when he was asked: "So it's fair to say that your intention in administering those nerve block injections would be to provide major regional anesthesia in that area of the mouth that you were working on?" But defining "major regional anesthesia" as applied in this case is an issue of statutory interpretation; thus, Connell's opinions regarding this issue were not admissions in judicio. See *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 518 (1) (434 SE2d 63) (1993) (admissions in judicio are admissions of fact, not those that are merely the opinion or conclusion of the pleader as to law or fact). Further, we have specifically held that "neither the mouth nor the jaw is considered a major region [under] OCGA § 31-9-6.1 (a)." *Thompson v. Princell*, 304 Ga. App. 256, 259 (a) (696 SE2d 91) (2010) (Generally, "major region" is defined as an "entire arm, leg, torso, or any combination thereof.").

Accordingly, the trial court did not err in granting partial summary judgment to Connell on Roberts' informed consent claim.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 14, 2011 — 

*Curtis A. Thurston, Jr.,* for appellant.

*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Kevin A. Leipow,* for appellees.

