**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 26, 2024**

# In the Court of Appeals of Georgia

A24A0852. BARNES v. STATE FARM FIRE AND CASUALTY
   COMPANY.

HODGES, Judge.

Plaintiff Aundray Barnes appeals from the trial court's grant of summary judgment to defendant State Farm Fire and Casualty Company, the insurance company providing liability coverage to defendant Lyft, Inc. The sole issue on appeal is whether the trial court erred in determining that Lyft is not a motor carrier as defined by the Georgia Motor Carrier Act and that State Farm, as its liability insurance provider, therefore could not be directly named as a defendant in Barnes' lawsuit. Because State Farm has not met its burden of proving that Lyft is exempt from the Georgia Motor Carrier Act's definition of motor carrier, it was proper for

Barnes to directly name State Farm in her lawsuit. We therefore reverse the trial court's decision.

We review the construction of statutes under a de novo standard. See *Hankla v. Postell*, 293 Ga. 692, 693 (749 SE2d 726) (2013). Likewise, "[w]hen this Court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence." (Citation and punctuation omitted.) *EZ Green Assocs. v. Georgia-Pacific Corp.*, 318 Ga. App. 655, 658 (1) (a) (734 SE2d 485) (2012). "[T]he opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion." (Citation and punctuation omitted.) Id. at 657-658 (1) (a).

So viewed, the underlying facts as detailed in Barnes' complaint — assumed true for the sake of this appeal — show that Barnes was involved in a motor vehicle collision with a car driven by Rome Leite-Brown in June 2020. At the time, Leite-Brown was operating his vehicle as a driver for Lyft. In May 2022, Barnes sued Liete-Brown, Lyft, and State Farm as Lyft's insurance provider. State Farm answered and moved for summary judgment, claiming that Lyft is not a motor carrier as defined by

Georgia statutory law, and, therefore, State Farm could not be joined directly in Barnes' lawsuit. The trial court granted State Farm's motion, and this appeal followed.

The general rule in Georgia is that "a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." *Hartford Ins. Co. v. Henderson & Son*, 258 Ga. 493, 494 (371 SE2d 401) (1988); accord *Haezebrouck v. State Farm Mut. Auto. Ins. Co.*, 252 Ga. App. 248 (1) (555 SE2d 764) (2001). However, there are exceptions to this general rule. For example, in cases brought against "motor carriers," Georgia law permits direct actions against liability insurance companies. See OCGA § 40-1-112 (c) (2012) ("It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract.")[1]; OCGA § 40-2-140 (d) (4) (2015) ("Any person having a cause of action, whether arising in tort or contract, under this Code section

_____

[1] This statute was amended effective July 1, 2024, which included a rewrite of subsection (c) to limit when a party can join in the same cause of action the motor carrier and its insurance provider. See Ga. L. 2024, p. 966, § 1. The cited portion, however, remained unchanged.

may join in the same cause of action the motor carrier and its insurance carrier.")[2]; see also *Nat. Indem. Co. v. Lariscy*, 352 Ga. App. 446, 449 (835 SE2d 307) (2019) (holding that the statutory exceptions in OCGA §§ 40-1-112 (c) and 40-2-140 "permit a direct action by an injured party against an insurance carrier which insures a motor carrier").

> The purpose of permitting joinder of an insurance company in a claim against a motor carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence. Additionally, it enables injured persons to recover compensation more efficiently and quickly and encourages insurers to resolve legitimate claims by settlement.

(Citations and punctuation omitted.) *Hughes v. Ace American Ins. Co.*, 368 Ga. App. 650, 651-652 (888 SE2d 341) (2023). The direct action statutory exceptions are in derogation of common law, and their terms therefore require strict compliance. *Lariscy*, 352 Ga. App. at 449.

Barnes' sole contention on appeal is that the trial court erred in determining that Lyft is not a motor carrier as defined by the Georgia Motor Carrier Act and,

---

[2] This statute was amended effective July 1, 2024, which included a rewrite of subsection (d) (4) to limit when a party can join in the same cause of action the motor carrier and its insurance provider. See Ga. L. 2024, p. 966, § 2. The quoted section, however, remained in the statute.

therefore, in dismissing her direct action against State Farm, Lyft's liability insurer. This appears to be a question of first impression in Georgia, and, given the statutory language enacted by the General Assembly in the Georgia Motor Carrier Act, we agree with Barnes that the trial court erred in this case.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). "Indeed, as long as the statutory language is clear and does not lead to an unreasonable or absurd result, it is the sole evidence of the ultimate legislative intent." (Citation and punctuation omitted.) *AMG, LLC v. Ga. Dept. of Transp.*, Case No. A24A0376, 2024 Ga. App. LEXIS 267, at *9 (2) (June 26, 2024).

With these principles in mind, we necessarily turn to the Georgia Motor Carrier Act as our starting point for determining whether Lyft is a motor carrier. According

to State Farm, ride share network services like Lyft are governed *only* by Part 4 of the Motor Carrier Act, and not Part 2. We disagree.

1. *The Georgia Motor Carrier Act.* The Georgia General Assembly enacted the Motor Carrier Act, which included Parts 1-3, in 2012. Ga. L. 2012, p. 580, § 1.[3] Part 1 encompasses OCGA §§ 40-1-50 through 40-1-58, generally addressing the creation of the Motor Carrier Act and penalties for violations of the Act.[4] Part 2 encompasses OCGA §§ 40-1-100 through 40-1-130, generally addressing Act definitions, commissioner authorizations, applications and requirements of motor carriers, and certifications of motor carriers.[5] Part 3 encompasses OCGA §§ 40-1-150 through 40-1-170, generally addressing Georgia limousine carriers.[6]

Under Part 2 of the Act, a "motor carrier" is defined as

[e]very person owning, controlling, operating, or managing any motor vehicle, including the lessees, receivers, or trustees of such persons or receivers appointed by any court, used in the business of transporting for hire persons, household goods, or property or engaged in the activity of

---

[3] The Act became effective on July 1, 2013. Ga. L. 2013, p. 838, § 20.

[4] Ga. L. 2012, p. 580, § 1.

[5] Ga. L. 2012, p. 580, § 1.

[6] Ga. L. 2012, p. 580, § 1.

nonconsensual towing pursuant to Code Section 44-1-13 for hire over
any public highway in this state.

OCGA § 40-1-100 (12) (A) (2013). The Act, however, exempts a number of vehicles

that would otherwise fall under the definition of "motor carrier," including certain

taxicabs and limousine carriers. OCGA § 40-1-100 (12) (B) (ii), (iii) (2013). Insurance

carriers may not be joined in the same action for these exempted vehicles. See, e.g.,

*Brunson v. Valley Coaches*, 173 Ga. App. 667, 669 (2) (327 SE2d 758) (1985) (finding

that a taxicab insurer could not be joined as a party defendant with its insured where

there had been no judgment previously obtained against the insured). The burden of

proving that a party is exempt from the Motor Carrier Act lies with the party claiming

the exemption, and there is no burden on the opposing party to prove that a vehicle

is not within the exemption. See *Jarrard v. Clarendon Nat. Ins. Co.*, 267 Ga. App. 594,

595 (600 SE2d 689) (2004); see also *Occidental Fire & Cas. Co. of North Carolina v.*

*Johnson*, 302 Ga. App. 677, 678 (691 SE2d 589) (2010). With the exception of minor

revisions and a subsection number change in 2013, no amendments or alterations have

been made to the definition of motor carrier or the motor carrier exemptions since the

Article was enacted. Compare OCGA § 40-1-100 (10) (2012) with OCGA § 40-1-100 (12) (2024); see also Ga. L. 2013, p. 838, § 6.

In 2015, the Georgia General Assembly amended the Act to include Part 4, which encompasses OCGA §§ 40-1-190 through 40-1-200, addressing "Ride Share Network Services and Transportation Referral Services."[7] Ga. L. 2015, p. 1262, § 3. The parties do not dispute that Lyft is a "ride share network service" as defined in OCGA § 40-1-190 (4) (2015):

> "Ride share network service" means any person or entity that uses a digital network or Internet network to connect passengers to ride share drivers for the purpose of prearranged transportation for hire or for donation. The term "ride share network service" shall not include any corporate sponsored vanpool or exempt rideshare[8] as such terms are defined in Code Section 40-1-100, provided that such corporate

---

[7] The General Assembly subsequently enacted Part 5, encompassing OCGA §§ 40-1-220 - 40-1-231, generally addressing peer-to-peer car-sharing programs, but that Part is not at issue in this appeal. Ga. L. 2020, p. 310, § 2.

[8] "Exempt rideshare" is defined in OCGA § 40-1-100 (7) (2013) to mean government-endorsed rideshare programs; rideshare programs where "a rideshare driver seeks reimbursement for, or the rideshare participants pool or otherwise share, rideshare costs such as fuel;" and certain leasing or rental of a vehicle for rideshare purposes.

8

sponsored vanpool or exempt rideshare is not operated for the purpose of generating a profit.[9]

Part 4 defines a "ride share driver" as "an individual who uses his or her personal passenger car, as defined in paragraph (41) of Code Section 40-1-1,[10] to provide transportation for passengers arranged through a ride share network service." OCGA § 40-1-190 (3) (2015).[11] The Part is broken into 12 subsections, which encompass titles such as definitions, legislative findings and preemption, registration and licensure requirements for both transportation referral service providers and ride share network service providers, registration of taxi services, requirements regarding lists of drivers, prohibited contracts and referrals, advertising and signage display, rates charged,

---

[9] A very minor revision changing "Internet" to "internet" was made to this definition in 2024. See Ga. L. 2024, p. 1052, § 4 (13).

[10] OCGA § 40-1-1 (41) (2014) defines "passenger car" as "every motor vehicle, except all-terrain vehicles, motorcycles, motor driven cycles, multipurpose off-highway vehicles, personal transportation vehicles, and low-speed vehicles, designed for carrying ten passengers or less and used for the transportation of persons."

[11] This definition was amended in 2024 to delete the phrase "as defined in paragraph (41) of Code Section 40-1-1." See Ga. L. 2024, p. 1052, § 4 (13). The parties do not address or argue that the change made to the statute in 2024 has any bearing on this case.

waivers, and inapplicability to equine-drawn or other nonmotorized vehicles. Part 4 does not include any reference to whether such ride share network services are motor carriers,[12] to liability, or to direct actions by liability insurers.

2. *Applicability of the Georgia Motor Carrier Act to ride share services*. State Farm argues that ride share network services like Lyft are not subject to the OCGA § 40-1-100 (12) (A) definition of motor carrier and, therefore, OCGA § 40-1-112 (c) (2012), permitting direct actions against a motor carrier's liability insurance carrier, does not apply. State Farm points to language in OCGA § 40-1-112 (c) that specifically limits naming the insurance company as a defendant to "a cause of action arising *under this part*[,]" which is Part 2. (Emphasis supplied.) As stated earlier, we disagree with State

---

[12] See, e.g., 625 ILCS 57/25 (e), where Illinois specifically noted in its statute that transportation network companies like Lyft "are not common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do they provide taxicab or for-hire vehicle service." That portion of the statute, however, became "inoperative on and after January 1, 2024[,]" 625 ILCS 57/25 (e), and an Illinois appellate court noted that absent this statutory section, "ridesharing companies would likely be deemed common carriers." *Doe v. Lyft*, 176 NE3d 863, 869 (I) (Ill. App. 2020). See also N.Y.V.T.L. § 1692 (1), where New York State specifically noted in its statute that transportation network companies like Lyft "shall not be deemed a common carrier . . . a contract carrier of passengers by motor vehicle . . . or a motor carrier," as defined in other sections of its transportation law.

Farm's assertion that ride share network services like Lyft are governed *only* by Part 4 of the Motor Carrier Act, and not Part 2.

It is true that the General Assembly enacted Part 4 of the Motor Carrier Act to "provide uniform administration and parity among ride share network services, transportation referral services, and transportation referral service providers, including taxi services, that operate in this state for the safety and protection of the public." OCGA § 40-1-191. It is equally true that Part 4 includes the following language: "The General Assembly fully occupies and preempts the entire field of administration and regulation over ride share network services, transportation referral services, transportation referral service providers, and taxi services as governed by this part [with certain listed exceptions]." That language, however, does not declare that ride share network services are not motor carriers as defined by OCGA § 40-1-100 (12) (A) of the Georgia Motor Carrier Act, nor does it exempt such companies from the Act's definition of motor carrier. It simply preempts the field of administration and regulation for certain types of transportation services to the extent that the rules are different from other portions of the Motor Carrier Act, as the General Assembly did for limousine carriers in Part 3 of the Act.

11

For example, OCGA § 40-1-193 (c) (2) mandates requirements specific to ride share network services, such as background checks for ride share drivers. Prior to the enactment of this statute, there was no standard for performing background investigations on individuals who used their personal vehicles to provide transportation services to passengers. Likewise, the statute mandates insurance coverage for ride share network service drivers, see OCGA § 40-1-193 (c) (4), as the General Assembly did for limousine carriers in OCGA § 40-1-166 (promulgating the requisite insurance coverage for limousine carriers). The fact that some of the standards under Part 4 and other Parts of the Motor Carrier Act are somewhat different is not dispositive; it is implausible that the General Assembly would have allowed ride share network services to remain operational under no public safety standards.

In addition, language in both Part 4 and other Parts of the Motor Carrier Act negate State Farm's argument that Part 4 is the only Part of the Act applicable to ride share network services. For example, the General Assembly noted that Part 4 was promulgated to provide uniform administration and parity among ride share and transportation services, "including taxi services," OCGA § 40-1-191, yet Part 2

specifically exempts certain taxicabs from the Act's definition of motor carrier (presumably not exempting all taxicabs). OCGA § 40-1-100 (12) (B) (ii). This fact suggests that the General Assembly intended for regulations in Parts 2 and 4 to coexist and be applied together. Similarly, Part 3 of the Motor Carrier Act specifically promulgates distinct and separate statutory rules and regulations for limousine carriers, yet the General Assembly mandated in Part 2 that "[l]imousine carriers as provided for in Part 3 of this article" are exempted from the definition of motor carrier. OCGA § 40-1-100 (12) (B) (iii). This suggests that the General Assembly intended for the Motor Carrier Act to be read as a whole, with specific regulations applicable to certain transportation carriers, and general regulations applicable to all motor carriers. See generally *United States v. Travelers Indem. Co.*, 253 Ga. 328, 329 (1) (320 SE2d 164) (1984) (examining an Act "as a whole" to interpret legislative intent); *Mornay v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 331 Ga. App. 112, 116 (3) (769 SE23d 807) (2015) (reading the Motor Carrier Act "in whole" to interpret the meaning of the term "capable" and to determine whether a vehicle was a motor carrier under the Act).

State Farm's citations to the Georgia Department of Public Safety Rules and Regulations do not alter our conclusion. Ga. Comp. R. & Regs. 570-38-4-.01 indicates that the Subchapter applies to

> persons and entities transporting passengers for hire in intrastate transportation in motor vehicles except that this Subchapter shall not apply to:
>
>> (1) Limousine services which are subject to Subchapter 570-5 of
>
> these Rules;
>
>> (2) Taxi services and/or any transportation network company, including but not limited to ride share network services, transportation referral services, and transportation referral service providers, which are subject to Subchapter 570-6 of these Rules; and
>
>> (3) Any person or entity which is otherwise exempt by law from regulation as a passenger carrier or any persons or entities which are otherwise exempt by law from regulation while transporting passengers for hire in intrastate transportation in a motor vehicle.

See also Ga. Comp. R. & Regs. 570-38-2-.01 (noting that the Subchapter applies to persons and entities required to register with the Department and obtain a license,

certificate, permit, or other form of authorization to operate as a motor carrier and does not apply to persons or entities "subject to regulation and required to register or secure a permit from the Department pursuant to Subchapter 6 (Transportation Network Companies and Taxi Services)"; Ga. Comp. R. & Regs. 570-38-6-.01 (noting that the Subchapter applies to "all ride share drivers, ride share network services, taxi services, transportation referral services, and transportation referral service providers as defined by OCGA § 40-1-190 and subject to regulation by OCGA §§ 40-1-190 through 200"). While the Department may have specifically exempted ride share network services from certain rules and regulations, it also exempted taxis and limousines. In the Motor Carrier Act, however, the General Assembly specifically chose to exempt certain taxicabs and limousines from the motor carrier definition, but did *not* exempt ride share network services from the definition.

3. *Statutory interpretation of the Georgia Motor Carrier Act.* The definition of "motor carrier" in OCGA § 40-1-100 (12) (A) is broad enough to include ride share network services. And clearly the General Assembly knew how to exempt certain vehicles as motor carriers. In fact, the General Assembly specifically exempted certain taxicabs and limousines which, like ride share network services, transport passengers

15

to their requested destinations. If the General Assembly had desired to exempt ride share network services like Lyft from the definition of motor carrier, it could have included such vehicles in the list of exemptions in OCGA § 40-1-100 (12) (B), as it did for certain taxicabs and limousines, when it added Part 4 to the Motor Carrier Act. It did not, despite the fact that Part 4 references taxicabs and other Parts of the Motor Carrier Act.

Because the Georgia Motor Carrier Act enumerates exceptions to the definition of motor carrier, we must presume that the General Assembly clearly expressed all the exceptions it intended, and this Court will not read further exceptions into the statute due to the canon of expressio unius. That canon posits that the listing of enumerated exceptions in an Act implies the exclusion of other exceptions:

> Under the statutory interpretation doctrine of expressio unius est exclusio alterius, where the General Assembly includes particular language in one section of a statute but omits it in another section of the same *Act*, it is generally presumed that the General Assembly acts intentionally and purposely in the disparate inclusion or exclusion.

(Citation and punctuation omitted; emphasis supplied.) *AMG*, 2024 Ga. App. LEXIS 267, at *10-11 (2); see also *Truist Bank v. Stark*, 359 Ga. App. 116, 119 (1) (854 SE2d

784) (2021) ("If some things are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. The omission of any such reference from the Code subsection must be regarded as deliberate.") (citations and punctuation omitted). In short, the General Assembly's decision not to list ride share network services in the list of exceptions implies a deliberate choice to include them within the definition of motor carrier.

While State Farm correctly asserts that our decision will subject ride share network services like Lyft to laws from which other transportation service providers, such as certain taxicabs and limousines, are expressly exempt, such as permitting a plaintiff to directly sue a ride share network service's liability insurer, this Court cannot read new exceptions into a statute which has already clearly enumerated its exceptions. See generally *United States v. Johnson*, 529 U. S. 53, 58 (120 SCt 1114, 146 LE2d 39) (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others."). "Regardless of whether [State Farm's] construction of the statute would better achieve the General Assembly's aforementioned intent, we are charged with interpreting the law in accordance with

the plain meaning of the text at issue." (Citation and punctuation omitted.) *AMG*, 2024 Ga. App. LEXIS 267, at *9 (2).

> Both our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions. Thus, [State Farm's] argument that its interpretation of the statute more effectively achieves the statute's overall policy concerns should be directed toward the General Assembly, not this Court.

(Citation and punctuation omitted.) Id. at *9-10 (2). "[T]he fact that an application of clear statutory text produces results that [State Farm] or others may think are unfair or unreasonable does not render the statute nonsensical or 'absurd.'" *Domingue v. Ford Motor Co.*, 314 Ga. 59, 67 (2) (c), n. 7 (875 SE2d 720) (2022).

4. *Conclusion.* In summary, applying the relevant rules of statutory construction to the Georgia Motor Carrier Act, we conclude that ride share network services like Lyft are not governed *only* by Part 4 of the Motor Carrier Act, and the definition of motor carrier in Part 2 of the Act is broad enough to include ride share network services like Lyft.[13] In addition, applying the doctrine of expressio unius, we further

---

[13] Other states likewise have found such vehicles fall under similar definitions of common carrier. See, e.g., *Doe v. Uber Technologies*, 184 FSupp.3d 774, 786 (I) (C) (N.D. Cal. 2016) (rejecting argument that Uber was merely "a 'broker' of

conclude that ride share network services like Lyft are not exempt from the Act's definition of motor carrier. The General Assembly did not specifically exclude such vehicles when it enacted Part 4 of the Motor Carrier Act, despite being able to do so and despite the fact that it excludes eight other types of vehicles. Because State Farm has not met its burden of proving that Lyft is exempt from the Georgia Motor Carrier Act's definition of motor carrier, it was proper for Barnes to directly name State Farm, as Lyft's liability insurance provider, in her lawsuit under the version of OCGA § 40-1-112 (c) applicable both when the incident occurred in June 2020 and when

---

transportation services" and holding that Uber fell within California's definition of "common carrier" as "[e]very one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry").

Barnes filed her lawsuit in May 2022.[14] See *Lariscy*, 352 Ga. App. at 449. The trial court erred in finding otherwise and in granting summary judgment to State Farm.

*Judgment reversed. Doyle, P. J., and Watkins, J., concur.*

---

[14] This Court generally applies "the statute in effect at the time of the incident and will not apply an amended statute retroactively unless the statute's language imperatively requires it[.]" *Mornay*, 331 Ga. App. at 113, n. 2 (addressing whether an insurance company could be directly sued in a case involving the Motor Carrier Act); see also *Sapp v. Canal Ins. Co.*, 288 Ga. 681, 682 (1) (706 SE2d 644) (2011) (utilizing provisions of Motor Carrier Act in effect at time of the incident); but compare *In the Interest of S. W.*, 363 Ga. App. 666, 671 (2) (872 SE2d 316) (2022) (applying statute in effect at the time of filing to an issue regarding the procedure for filing a change of custody); see also *Stalvey v. State of Ga.*, 210 Ga. App. 544, 545 (1) (436 SE2d 579) (1993) (applying statute in effect at the time of filing to an issue regarding the procedure for service in a forfeiture case). We note that OCGA § 40-1-112 (c) remained unchanged from 2012 to 2024, and the parties do not address or argue that the changes made to the statute in 2024 have any bearing on this case.

October 28, 2024

### *ON MOTION FOR RECONSIDERATION*

In a motion for reconsideration, State Farm asserts that this Court "did not consider whether Lyft owned, operated, controlled, or managed the vehicle used in the transportation of passengers for hire that allegedly caused Barnes' injuries[,]" and it substantively argues for the first time in this Court that "using a digital network to connect passengers to ride share drivers does not constitute ownership, operation, control, or management of a motor vehicle." However, State Farm never raised this argument in its appellate brief, nor did it cite the cases on which it now relies for its position.[1] Instead, State Farm strictly argued, both on appeal and in the trial court, that ride share network service providers are governed by Part 4, and not Part 2, of the Motor Carrier Act. Accordingly, State Farm waived the argument it now makes on motion for reconsideration. *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 804 (824 SE2d 717) (2019) (on motion for reconsideration); see also *Milligan v. State*, 307 Ga. App. 1, 6 (703 SE2d 1) (2010) (on motion for reconsideration) (denying motion for reconsideration because it relied on a newly raised argument); see also *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal.").

---

[1] In its initial brief before this Court, State Farm noted, without any supporting argument or citation of authority, that it disagreed with Barnes' assertion that Lyft "is in the business of owning, controlling, operating, or managing motor vehicles that are used in the transporting of people over public highways of the State of Georgia." However, State Farm never argued or provided any authority in its appellate brief before us or in the court below that Lyft did not own, control, operate, or manage motor vehicles that use its digital network.